IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
SENIOR JUDGE WALKER D. MILLER

Civil Action No. 07-cv-00295-WDM-CBS

LIONEL ALBERT VIGIL,

      Petitioner,

v.

ARI ZAVARAS, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

      Respondents.

---

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS

---

Miller, J.

      This matter is before me on Lionel Albert Vigil's Petition Under 28 U.S.C. § 2254 For Writ of Habeas Corpus ("Petition") (Docket No. 3).  Respondents answered the Petition (Docket No. 16).  Petitioner filed no traverse.  As Petitioner is proceeding *pro se,* I must construe his pleadings liberally and hold him to a "less stringent standard." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991) (citing *Haines v. Kerner,* 404 U.S. 519, 520-21 (1972)).  After reviewing the pertinent portions of the record in this case including the Petition, the Answer and the state court record (Docket No. 19), I conclude that the Petition should be denied.

Background

      The facts[1] leading to Petitioner's conviction are as follows:  On July 12, 1994,

---

[1]This general introductory background is taken from the statement of facts in Petitioner's opening brief on direct appeal.  Answer at Exhibit A, p. 13-17.

Petitioner was charged in Alamosa County District Court (the "trial court") with the offenses of sexual assault on a child, sexual assault on a child by one in a position of trust, and aggravated incest.  The child at issue was Petitioner's six year old son, identified as CV.  A jury trial began on July 15, 1996, and on July 18, 1996, the jury returned a verdict finding Petitioner guilty on all charges.  On September 6, 1996, the trial court dismissed the first count of sexual assault on a child, finding that it was a lesser included offense of the second count, sexual assault on a child by one in a position of trust.  The trial court then sentenced Petitioner to sixteen years on the two remaining counts, to be served consecutively.

Petitioner filed a timely notice of appeal with the Colorado Court of Appeals (the "CCA").  In his appeal, Petitioner raised nine issues.  On August 6, 1998, the CCA affirmed the judgments, but vacated the portion of the sentence imposing consecutive sentences and remanded Petitioner's case to the trial court to amend the mittimus to reflect that the sentences be served concurrently.  *See People v. Vigil*, No. 96CA1877 (Colo. App. Aug. 6, 1998) (unpublished decision) ("*Vigil I*") (Answer at Exhibit D). Petitioner filed a petition for writ of certiorari with the Colorado Supreme Court (Answer at Exhibit E), which was denied on March 1, 1999 (Answer at Exhibit H).

Petitioner then filed a motion to quash his conviction pursuant to Colo. R. Crim. P. 35(c).  An evidentiary hearing was held on the motion on April 1, 2003.  The trial court denied Petitioner's Rule 35(c) motion by written order on August 8, 2003. Petitioner appealed the denial of his Rule 35(c) motion, and the CCA returned the case to the trial court for a hearing on the issue of whether hearsay admitted at the trial had violated Petitioner's constitutional right to confrontation.  Following the hearing, the trial

2

court issued an order denying relief on that issue.  Petitioner then filed an amended

notice of appeal with the CCA on January 28, 2005 (Answer at Exhibit I).  A panel of the

CCA affirmed the trial court on May 25, 2006.  *See People v. Vigil*, 03CA1822 (Colo.

App. May 25, 2006) (unpublished decision) (*"Vigil II")* (Answer at Exhibit K).  The

Colorado Supreme Court denied the petition for writ of certiorari on November 27, 2006

(Answer at Exhibit O).

Petitioner then filed the instant action, alleging that:  (1) the trial court's exclusion

of evidence of alternate suspects pursuant to the Colorado Rape Shield Statute

violated Petitioner's right to due process; (2) the trial court's exclusion of evidence of

alternate suspects violated Petitioner's right to confrontation; (3) the trial court violated

Petitioner's right to a fair trial by denying a challenge for cause to a prospective juror; (4)

the trial court violated Petitioner's right to a fair trial by improperly admitting opinion

evidence and argument that bolstered CV's credibility; (5) the trial court violated

Petitioner's right to a fair trial by improperly admitting other irrelevant and highly

prejudicial evidence; (6) Petitioner's right to a fair trial was violated by the prosecutor's

improper statements during closing argument; (7) Petitioner's right to a fair trial was

violated by the cumulative effects of the alleged errors at trial; (8) Petitioner's conviction

was obtained in violation of his Sixth Amendment right to confrontation because it rests

on hearsay evidence obtained from CV; and (9) Petitioner received ineffective

assistance of counsel at trial.

## Standard of Review

In the course of reviewing state criminal convictions in federal habeas corpus

proceedings, a federal court does not sit as a super-state appellate court.  *See Estelle*

*v. Mcguire*, 502 U.S. 62, 67-68 (1991); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).

"When a federal district court reviews a state prisoner's habeas petition pursuant to 28

U.S.C. § 2254 . . . . [it] does not review a judgment, but the lawfulness of the petitioner's

custody *simpliciter.*"  *Coleman v. Thompson*, 501 U.S. 722, 730 (1991) (internal

quotations and citations omitted).  The exhaustion of state remedies requirement in

federal habeas cases dictates that a state prisoner must "give the state courts one full

opportunity to resolve any constitutional issues by invoking one complete round of the

State's established appellate review process."  *O'Sullivan v. Boerckel*, 526 U.S. 838,

845 (1999).

Because the Petition was filed after April 24, 1996, the effective date of the

Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA"), that statute

governs my review.  *Cannon v. Mullin,* 383 F.3d 1152, 1158 (10th Cir. 2004) (citing

*Rogers v. Gibson,* 173 F.3d 1278, 1282 n. 1 (10th Cir. 1999)).  Under the AEDPA, a

district court may only consider a habeas petition when the petitioner argues that he is

"in custody in violation of the Constitution or laws or treaties of the United States."  28

U.S.C. § 2254(a).

Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be

issued with respect to any claim that was adjudicated on the merits in state court unless

the state court adjudication:

> (1)  resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law,
> as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an
> unreasonable determination of the facts in light of the
> evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Claims of legal error and mixed questions of law and fact are reviewed pursuant to 28 U.S.C. § 2254(d)(1). *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir. 2003). The threshold question pursuant to § 2254(d)(1) is whether Petitioner seeks to apply a rule of law that was clearly established by the Supreme Court at the time his conviction became final. *See Williams v. Taylor*, 529 U.S. 362, 390 (2000). Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Id.* at 412. Furthermore,

> clearly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*. Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008).

If there is no clearly established federal law, that is the end of my inquiry pursuant to § 2254(d)(1). *See id.* at 1018. If a clearly established rule of federal law is implicated, I must determine whether the state court's decision was contrary to or an unreasonable application of that clearly established rule of federal law. *See Williams*, 529 U.S. at 404-05.

> A state-court decision is contrary to clearly established federal law if: (a) "the state court applies a rule that contradicts the governing law set forth in Supreme Court cases"; or (b) "the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from [that] precedent." *Maynard* [*v. Boone*], 468 F.3d [665,] 669 [(10th Cir. 2006)] (internal quotation marks and brackets omitted) (quoting *Williams*, 529 U.S. at 405). "The word 'contrary' is commonly understood to mean 'diametrically different,'

5

'opposite in character or nature,' or 'mutually opposed.'"
*Williams*, 529 U.S. at 405 (citation omitted).

A state court decision involves an unreasonable application of clearly established federal law when it identifies the correct governing legal rule from Supreme Court cases, but unreasonably applies it to the facts. *Id.* at 407-08. Additionally, we have recognized that an unreasonable application may occur if the state court either unreasonably extends, or unreasonably refuses to extend, a legal principle from Supreme Court precedent to a new context where it should apply.

*House*, 527 F.3d at 1018.

My inquiry pursuant to the "unreasonable application" clause is an objective one. *See Williams*, 529 U.S. at 409-10. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable." *Id.* at 411. "[A] decision is 'objectively unreasonable' when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law." *Maynard*, 468 F.3d at 671. "[O]nly the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254." *Id.*

Claims of factual error are reviewed pursuant to 28 U.S.C. § 2254(d)(2). *See Romano v. Gibson*, 278 F.3d 1145, 1154 n.4 (10th Cir. 2002). Section 2254(d)(2) allows a court to grant a writ of habeas corpus only if the state court decision was based on an unreasonable determination of the facts in light of the evidence presented. Pursuant to § 2254(e)(1), I must presume that the state court's factual determinations are correct and Petitioner bears the burden of rebutting the presumption by clear and

convincing evidence.  "The standard is demanding but not insatiable . . . [because] '[d]eference does not by definition preclude relief.'"  *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)).

Finally, I "owe deference to the state court's *result*, even if its reasoning is not expressly stated."  *Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999).  Therefore, I "must uphold the state court's summary decision unless [my] independent review of the record and pertinent federal law persuades [me] that its result contravenes or unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented."  *Id.* at 1178.  "[T]his 'independent review' should be distinguished from a full *de novo* review of the petitioner's claims."  *Id.*

Discussion

As a preliminary matter, Respondents do not challenge the timeliness of the Petition under the one-year limitation period set forth in 28 U.S.C. § 2244(d)(1), nor do they argue that Petitioner failed to exhaust his state court remedies pursuant to 28 U.S.C. § 2254(b).  Accordingly, I will address the merits of Petitioner's claims.

1. Claim One

In his first claim, Petitioner argues that the trial court's application of the Colorado Rape Shield Act to exclude evidence of other possible perpetrators violated his right to due process.[2]  Petition at 12-13.  He asserts that the trial court should have allowed him

---

[2]Although Petitioner also asserts that this ruling violated his right to confrontation pursuant to the Sixth Amendment, I address this argument in my discussion of Petitioner's second claim, which likewise presents the argument that this ruling by the trial court violated Petitioner's right to confrontation.

to introduce evidence in the form of witness testimony and social services records that

would have shown that CV had been sexually abused by his uncle.  *Id.*

In addressing this claim raised by Petitioner on direct appeal, the CCA found the

following:

> Here, defendant filed a motion under § 18-3-407(2)[3] seeking to
> introduce evidence to show that the victim possibly had been sexually
> assaulted earlier by another family member.  Defendant argued that this
> evidence was relevant to the material issue of the identity of the
> perpetrator and the source of the victim's behavior indicating sexual
> abuse.  The trial court, after an in camera review of the social services'
> records, denied the motion.
>
> The trial court found that the social services records revealed that
> an incident had been reported in which another relative had grabbed the
> victim's crotch through his pants.  The relative claimed that he was trying
> to get the victim's attention so that he would stop squirming and put on his
> shoes and socks.  After an investigation, social services and the juvenile
> authorities determined that the incident, though inappropriate, was not
> done with sexual intent.
>
> Further, at the hearing, as the trial court noted, the victim's mother
> denied making a statement to the victim's doctor that she was concerned
> because the victim and this relative had engaged in "oral sex activity."
> Rather, she explained, she had told the doctor that she thought that the
> victim was displaying signs of having been molested and that she thought
> it might be the relative because she had been told that he had been
> "caught" several years ago, at the age of four or five, pulling down a
> baby's diaper.  The mother also denied ever witnessing any incident
> between the victim and the other relative.
>
> Based on this, the trial court found that, because the evidence
> offered by defendant was speculative and the alleged prior abuse was not
> similar to the abuse described by the victim, the offered evidence was not
> relevant to a material issue of the case.  The court also found that,

---

[3] This statute provides, in relevant part, that "[e]vidence of specific instances of the
victim's or a witness's prior or subsequent sexual conduct, . . . may be admissible only at trial
and shall not be admitted in any other proceeding . . . ."  Colo. Rev. Stat. § 18-3-407(1).  The
statute further provides that "[a]t trial, such evidence shall be presumed to be irrelevant except:"
in circumstances not present in the instant case.  *Id.*

>although the victim had initially named others as the ones who hurt him, the victim did not provide details of any assault and did not name them at a later time.  Thus, the trial court appropriately determined that any evidence that others had sexually abused the victim was inadmissible. See People v. Mulligan, 193 Colo. 509, 568 P.2d 449 (1977) (evidence that another person committed the crime with which defendant is charged is inadmissible absent some proof that the other person committed an act directly connecting him or her with the crime).

*Vigil I* at 8-9.

While Petitioner challenges the trial court's application of the Colorado Rape Shield Statute, Colo. Rev. Stat. § 18-3-407 *et seq.*, on federal habeas review, I need not address the validity of that statute.  That is, a federal habeas court generally does not review a state court's evidentiary rulings, *see, e.g., Estelle*, 502 U.S. at 67-68, because its review is concerned only with whether Petitioner has presented a violation of "the Constitutions, laws, or treaties of the United States." *Id.* at 68.  State evidentiary determinations normally do not present federal constitutional issues.  *See Crane v. Kentucky*, 476 U.S. 683, 689 (1986) (nothing the Court's "traditional reluctance to impose constitutional constraints on ordinary evidentiary rulings by state trial courts").  However, the Supreme Court has noted that an exception to this general rule exists where the state court has applied its evidentiary rules unfairly to prevent a defendant from presenting evidence critical to his defense.  *See, e.g., Chambers v. Mississippi*, 410 U.S. 284, 302 (1973); *Washington v. Texas*, 388 U.S. 14, 16 (1967).  My inquiry "hinges on the materiality of the excluded evidence to the defense." *Duvall v. Reynolds*, 139 F.3d 768, 789 (10th Cir. 1998) (quoting *Mathews v. Price*, 83 F.3d 328, 332 (10th Cir. 1996)).  Evidence is material if its admission might have affected the outcome of the trial; that is, it would have created a reasonable doubt that did not otherwise exist.  *See*

*United States v. Valenzuela-Bernal*, 458 U.S. 858, 868 (1982); *see also Richmond v. Embry*, 122 F.3d 866, 872 (10th Cir. 1997).

I am not persuaded that the CCA's decision was contrary to, or an unreasonable application of, these principles.  As the CCA explained, the evidence proffered by Petitioner was not relevant or admissible because there was no actual proof that connected the abuse suffered by CV to the alternate suspect singled out by Petitioner. The trial court correctly found that Petitioner's evidence was speculative, and even if it did demonstrate that CV had been sexually abused by a relative in the past, the type of abuse was not the same as that presented by the prosecution during Petitioner's trial. In other words, even if CV's uncle had once "grabbed [CV's] crotch through his pants," this appears to have no discernible connection to the abuse presented at trial, which tended to show that CV had been subjected to oral and/or anal sexual contact. Moreover, after investigation, this prior incident was found to be non-sexual in nature. Therefore, I agree with the CCA that this evidence was not material.  Petitioner has not demonstrated that the state trial court's evidentiary ruling might have affected the outcome of the trial or that it would have created a reasonable doubt that did not otherwise exist.  *See Valenzuela-Bernal*, 458 U.S. at 868.  Accordingly, I find and conclude that the CCA's decision was not contrary to or an unreasonable application of clearly established federal law, and Petitioner is not entitled to federal habeas relief on claim one.

    2.  Claim Two

In his second claim, Petitioner asserts that the trial court violated his right to confrontation by prohibiting him from introducing "alternate suspect" evidence and by

10

"allowing the prosecution to falsely argue that CV accused only his father . . . ."  Petition at 13.  Petitioner contends that during initial interviews with CV, he named other people who had abused him, including his uncle.  Petition at 13.  Petitioner asserts that while the trial court permitted evidence concerning the initial interview, it improperly excluded all of CV's statements where he identified others that had sexually abused him.  *Id.*

The trial court held a hearing on Defendant's motion filed pursuant to the Colorado Rape Shield Act, Colo. Rev. Stat. § 18-3-407, on June 25, 1996.  *See* Trial Court Transcript, Vol. 7.  At the hearing, defense counsel identified two witnesses, Ms. Laine Velinder and Ms. Joyce Stegman, who had testified during a preliminary hearing that CV also identified his uncle as someone who had "hurt" him at some time in the past.  *See id.* at 19-21.  The trial judge ruled that such evidence was not relevant, finding in part, that "[t]he fact, if it is a fact, that [CV's uncle] grabbed [CV's] crotch over the clothing or grabbed at the crotch over the clothing . . . doesn't prove anything."  *Id.* at 28.  He further found that there was evidence that the prior incident "was not sexually motivated, and there was absolutely nothing that places it in the realm of some kind of horrendous sexual, prior sexual contact.  It simply does not rise to the level of what the evidence in this case is going to show."  *Id.* at 28-29.  The trial court therefore denied Petitioner's motion, ruling that Petitioner would not be allowed to cross-examine the witnesses regarding the incident involving CV's uncle at trial.  *Id.* at 29.

In addressing this claim, the CCA found as follows:

> Defendant also asserts that the trial court erred in excluding certain of the victim's out-of-court statements purporting to identify other persons who had abused him and to demonstrate prior sexual experience.  He argues that because certain statements by the victim offered by the prosecution through its witnesses were determined to be reliable and

11

admissible, then all of the victim's out-of-court statements to those witnesses, including the ones defendant offered, also must be admissible. As a result, he contends, the trial court's erroneous exclusion of these statements deprived him of his right to present a defense and to cross-examine the witnesses against him.  We perceive no error.

Although a defendant has the constitutional right to confront the witnesses against him through cross-examination, this right is not absolute.  The trial court may preclude cross-examination on matters which are irrelevant and immaterial to the issues at trial.  People v. Bell, 809 P.2d 1026 (Colo. App. 1990).

Under § 13-25-129, C.R.S. 1997, out-of-court statements by a child victim are admissible only if the trial court finds, after a hearing, that the time, context, and circumstances of the statement provide sufficient safeguards of reliability.  And, if the child is unavailable as a witness, corroborative evidence of the sexual abuse that is the subject of the child's statement must exist.  Stevens v. People, 796 P.2d 946 (Colo. 1990).

Here, the trial court heard defendant's offer of proof concerning these statements on several occasions before and during trial.  It determined that these statements, unlike those offered by the prosecution, were not supported by any evidence tending to establish their reliability under § 13-25-129 or relevancy under CRE 403.  The court further found that, because defendant offered no evidence to corroborate the acts alleged as prior sexual experience, the statements were not admissible under § 13-25-129.

As discussed, although the victim initially named defendant and others as the persons who abused him, the victim did not provide details of an assault by the others or name them at another time or to other persons.  Under these circumstances, the trial court properly precluded defendant from cross-examining the witnesses concerning these statements.

*Vigil I* at 8-11.

While the Confrontation Clause of the Sixth Amendment provides a defendant

the right to cross-examine witnesses at a criminal trial, the Supreme Court has found

that trial judges have wide latitude under the Confrontation Clause to impose

reasonable limits on cross-examination that is prejudicial, confusing, repetitive, or "only

12

marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986).  I have reviewed the social services records that document and discuss the incident between CV and his uncle.  *See* State Court Record at Supplemental Documents.  Like the trial court, I find that this evidence is irrelevant, as it relates to one isolated incident between CV and his uncle that was found to be non-sexual in nature.  This evidence does not demonstrate that CV's uncle caused the sexual abuse suffered by CV, which as set forth previously, is completely different and much more severe in nature.  I agree with the CCA that the trial court's exclusion of evidence related to the incident with CV's uncle was well within the trial court's discretion to limit cross examination by excluding testimony that is not relevant, or only marginally relevant.  Accordingly, I find and conclude that the CCA's decision was not contrary to or an unreasonable application of clearly established federal law, and Petitioner is not entitled to federal habeas relief on claim two.

     3.  <u>Claim Three</u>

     In his third claim, Petitioner asserts that he was denied his constitutional right to a fair trial when his challenge for cause to a juror with alleged bias was denied.  Petition at 13.  He argues that a juror identified as "Benson" admitted that his son had been in counseling with CV's therapist and the prosecution's witness, Dr. Mary Hennessey.  *Id.* Petitioner further argues that the juror admitted that he would place more trust in Ms. Hennessey's testimony and, therefore, Petitioner contends that the trial court erred in denying the defense's challenge for cause to this juror.  *Id.*

     State trial courts have broad discretion in ruling on the qualification of prospective jurors.  A state trial judge's exercise of that discretion may be overturned only for

manifest error. *See Mu'Min v. Virginia*, 500 U.S. 415, 428 (1991). The constitutional

requirement of juror impartiality mandates that a juror must be able to set aside his or

her opinion "and render a verdict based on the evidence presented in court . . . ."

*Patton v. Yount*, 467 U.S. 1025, 1037 n. 12 (1984). Whether a particular juror can

actually meet this standard is "a determination to which habeas courts owe special

deference . . . ." *Id.* A state court's determination on the question of whether a juror

would be impartial and decide the case on the evidence is entitled to a presumption of

correctness. *Id.* at 1038; 28 U.S.C. § 2254(e)(1). The question on habeas review is

whether there is fair support in the record for the state court's determination that the

prospective juror would be impartial. *Patton*, 467 U.S. at 1038; *see also Wainwright v.*

*Witt*, 469 U.S. 412, 426-29 (1985). This presumption is overcome only if Petitioner

establishes defects in either the voir dire procedure or the qualification of the jurors.

*See id.* However, such defects are constitutionally inadequate only when they "render

[Petitioner's] trial fundamentally unfair." *Mu'Min*, 500 U.S. at 426.

In addressing this claim, the CCA applied state case law authority and found that

"the record here supports the [trial] court's determination that the juror demonstrated his

ability to render an impartial verdict." *Vigil I* at 5. Although the CCA exclusively applied

state law, the cases cited by the CCA do not contain a legal standard "diametrically

different" from, "opposite in character or nature" from, or "mutually opposed" to the

correct legal standard. *Williams*, 529 U.S. at 406-07. Because the state court identified

and applied the correct governing legal principle in this regard, Petitioner has not

demonstrated that he is entitled to relief on this claim under 28 U.S.C. § 2254(d)(1).

Moreover, a review of the state court findings regarding the voir dire of the juror

14

demonstrates that the factual determinations were reasonable in light of the evidence presented.  The appellate court noted the previous relationship between the juror and Ms. Hennessey, but when weighed against the juror's indication that he could set aside his personal feelings and not accord the testimony of Ms Hennessey any greater weight, found that voir dire as a whole supported the conclusion that the juror could be fair and impartial.  *See* Answer at Exhibit D, p. 6.  Petitioner presents no "clear and convincing evidence" to rebut the correctness of the state court's findings.  28 U.S.C. § 2254(e)(1)

Finally, to the extent that Petitioner argues that the trial court's denial of his request to strike the juror for cause required him to use one of his peremptory challenges to remove the juror, thereby denying him his full complement of peremptory strikes in violation of his constitutional rights, I find that this argument also fails.  In *United States v. Martinez-Salazar*, the Supreme Court found that "peremptory challenges [to prospective jurors] are not of constitutional dimension, rather they are one means to achieve the constitutionally required end of an impartial jury."  528 U.S. 304, 307 (2000) (quoting *Ross v. Oklahoma*, 487 U.S. 81, 88 (1988) (internal quotation marks omitted)).  The *Martinez-Salazar* Court examined "the erroneous refusal of a trial judge to dismiss a potential juror for cause, followed by the defendant's exercise of a peremptory challenge to remove that juror."  *Id.*  The Court held that "if the defendant elects to cure such error by exercising a peremptory challenge, and is subsequently convicted by a jury on which no biased juror sat, he has not been deprived of any rule-based or constitutional right."  *Id.; see also United States v. Brooks*, 161 F.3d 1240, 1245 (10th Cir. 1998) (even if the district court erred in refusing to excuse a biased juror

15

for cause, the error was harmless because the defendant exercised a peremptory challenge to strike the juror).  As such, even assuming that the trial court erred in failing to remove the juror for cause, Petitioner cured any constitutional error when he used a peremptory challenge to achieve an impartial jury. *Martinez-Salazar*, 528 U.S. at 307; *Ross*, 487 U.S. at 88.  Moreover, Petitioner does not contend that any of the jurors who actually served on the jury were biased or prejudiced against him.  Accordingly, I find that federal habeas relief is not warranted on this claim, and it must be dismissed.

### 4. Claim Four

In his fourth claim, Petitioner asserts that he was denied his right to a fair trial by the admission of opinion evidence and argument that allegedly bolstered CV's credibility improperly.  Petition at 13.  He argues that "the prosecution improperly suggested that the truth of CV's hearsay statements was confirmed by his medical unavailability and by his apparent belief in the truth of his own statements." *Id.*  In Petitioner's direct appeal, he argued that Ms. Hennessey, CV's therapist, was allowed to testify in a manner that "cast blame for CV's unavailability upon [Petitioner]."  Answer at Exhibit A, p. 17.  Petitioner asserted that Ms. Hennessey's testimony impressed upon the jury that CV did not testify because he was terrified by Petitioner's alleged threats, and so damaged by Petitioner's abuse that he could not face Petitioner or anyone else in court. *Id.*  Petitioner argued that "[t]he net effect of [Ms. Hennessey's] testimony was to convey to the jury that [CV's] reports of sexual assault and physical threats were true.  No witness may give opinion testimony that a child was telling the truth on a specific occasion that the child makes a report of sexual assault." *Id.* at 18.

In addressing this claim, the CCA found the following:

16

We also do not agree with defendant that testimony by a witness concerning the victim's unavailability impermissibly bolstered the victim's credibility.

Neither a lay nor an expert witness may give an opinion with respect to whether a witness is telling the truth on a specific occasion. CRE 608(b); People v. Higa, 735 P.2d 203 (Colo. App. 1987).  However, a qualified expert may testify that the behavioral characteristics of a victim match those of other child victims of sexual abuse.  People v. Gaffney, 769 P.2d 1081 (Colo. 1989).

Contrary to defendant's contention, this witness did not give a personal opinion as to the victim's truthfulness upon a specific occasion.  Rather, she testified that the victim was unavailable because of the sexual abuse he had suffered and because he was "terrified" by the threats of physical violence he claimed had been made to him by defendant.  The expert did not give an opinion as to whether defendant had made the threats.

Moreover, without objection, the expert testified generally about children who make false allegations and how they easily can be manipulated, but she did not give her opinion as to whether the victim himself was making false allegations.  She also testified as to those symptoms a victim of sexual abuse might display and rendered her expert opinion that the victim demonstrated such symptoms.  This simply was not an impermissible comment on the victim's credibility.  See People v. Koon, 724 P.2d 1367 (Colo. App. 1986) (testimony by police psychologist describing behaviors demonstrated by victims of incest admissible when witness did not render opinion concerning victim's truthfulness in reporting assault).

Vigil I at 12-13.

Petitioner's constitutional challenge to the testimony of Ms. Hennessey is

governed by the general principle that "the Due Process Clause of the Fourteenth

Amendment provides a mechanism for relief" when "evidence is introduced that is so

unduly prejudicial that it renders the trial fundamentally unfair . . . ."  Payne v.

Tennessee, 501 U.S. 808, 825 (1991).  "Inquiry into fundamental fairness requires

examination of the entire proceedings, . . . ."  Le v. Mullin, 311 F.3d 1002, 1013 (10th

Cir. 2002) (citing *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974) (citation

omitted)).  Further, "because a fundamental fairness analysis is not subject to clearly

definable legal elements, when engaged in such an endeavor a federal court must tread

gingerly and exercise considerable self restraint."  *Duckett v. Mullin*, 306 F.3d 982, 999

(10th Cir. 2002) (internal quotation marks omitted).  In conducting its fundamental

fairness analysis, the court is not to "second guess a state court's application or

interpretation of state law . . . unless such application or interpretation violates federal

law."  *Bowser v. Boggs*, 20 F.3d 1060, 1065 (10th Cir. 1994).

I have reviewed the entire trial testimony of Ms. Hennessey.  Ms. Hennessey

testified, *inter alia*, that CV was terrified of disclosing the abuse because Petitioner had

allegedly told him that he would "tear his skin off or peel his skin off and that he would

kill his mother if [CV] let this be known to anybody."  Trial Court Transcript, Vol. 8 at p.

292.  When asked whether CV seemed to believe that threat, Ms. Hennessey

responded, "Oh, without a doubt."  *Id.*  She further stated, "It was all very real.  This was

all very real to him."  *Id.*  Like the appellate court, I find that Ms. Hennessey did not

improperly bolster CV's credibility, because she expressed no opinion as to whether the

threats actually occurred, but merely stated that CV believed that they had.  *See id.*

Further, she did not opine or testify that Petitioner committed sexual abuse or

threatened CV.  Instead, her testimony centered around her psychological evaluation of

the child and the symptoms she observed that tended to demonstrate that CV had been

sexually abused.  *See id.*  Upon my review of the record as a whole, I do not find that

the testimony of Ms. Hennessey was "so unduly prejudicial" that it rendered Petitioner's

trial fundamentally unfair.  *Payne*, 501 U.S. at 825.  Further, to the extent such law is

18

relevant, the Tenth Circuit has found in both *United States v. Charley*, 189 F.3d 1251,

1264-65, 1269 (10th Cir. 1999), and *Hellums v. Williams*, 16 Fed. Appx. 905, 2001 WL

892492, at *3 (10th Cir. Aug. 8, 2001) (unpublished decision), that an expert may testify

about symptoms consistent with sexual abuse without improperly vouching for the

witness's credibility.  Therefore, based upon my review of the state court record in

Petitioner's case, I find and conclude that the rulings of the trial court and the CCA in

admitting this evidence were not contrary to clearly established federal law, and did not

involve an unreasonable application of that clearly established federal law.

   5.  Claim Five

      In his fifth claim, Petitioner asserts that his right to a fair trial was violated by the

introduction of "irrelevant and highly prejudicial matters" at trial.  Petition at 14.

Specifically, he argues that a "videotaped statement [which] contained discussions of an

offered lie detector test, a prior uncharged accusation of sexual assault, rumors that he

was gay, his sexual practices, and the detective's belief in [Petitioner's] guilt" was

introduced at trial.  *Id.*

      In addressing this claim, the CCA found that:

         Defendant argues that the trial court erred in allowing the admission
      of irrelevant and prejudicial statements contained in a videotaped
      interview between him and an investigating officer.  Again, we disagree.

         Contrary to defendant's assertion that the trial court allowed the
      prosecution to play all of the second half of a videotaped interview
      containing the statements he challenges for the first time on appeal, our
      review of the record indicates that, apparently, only a small portion of the
      videotape was shown in open court.  Indeed, the trial court later referred to
      that portion as "a little clip."  And, the prosecutor, in his closing argument,
      indicated that he was replaying the same portion of the video and
      commented that this portion showed defendant and the investigating
      officer discussing one of the victim's drawings.

*Vigil I* at 13-14.

As previously set forth in my examination of Petitioner's fourth claim, Petitioner's challenge to the admission of this videotape evidence is governed by the rule that "the Due Process Clause of the Fourteenth Amendment provides a mechanism for relief" only when "evidence is introduced that is so unduly prejudicial that it renders the trial fundamentally unfair . . . ." *Payne*, 501 U.S. at 825.  Having reviewed the record, I do not find that the state court's appellate decision was contrary to or an unreasonable application of this standards.  Petitioner claims that the videotape "contained discussions of an offered lie detector test, a prior uncharged accusation of sexual assault, rumors that [Petitioner] was gay, his sexual practices, and the detective's belief in [Petitioner's] guilt."  Petition at 14.  However, the CCA found that the portion of the videotape that was played was a "small clip" and portrayed nothing more than Petitioner and the detective discussing one of CV's drawings.  *Vigil I* at 13-14.  Moreover, the trial court addressed this issue when ruling on Petitioner's 35(c) motion, and expressly found that "[t]he evidence does not support a finding that the jury saw anything more than a little clip of one of the videotapes . . . . There is no evidence, . . . that the prejudicial portions of the tape were played . . . ."  Trial Court Record, Vol. 13 at p. 148.   Pursuant to 28 U.S.C. § 2254(e)(1), "a determination of a factual issue made by a State court shall be presumed to be correct.  The [Petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  This presumption of correctness applies to factual findings of state appellate courts as well as to trial courts. *Sumner v. Mata*, 449 U.S. 539, 544-49 (1981).  Here, Petitioner present no such "clear and convincing evidence" to rebut the correctness of the state court's findings, and

20

therefore, Petitioner has made no showing that the prejudicial portions of the videotapes to which he refers were actually shown to the jury.  Because there is no evidence that any prejudicial evidence was presented to the jury, I find it clear that the admission of a small portion of a videotape which portrayed Petitioner and a detective discussing one of CV's drawings did not render Petitioner's trial fundamentally unfair.  Therefore, I find and conclude that the rulings of the trial court and the CCA in admitting this evidence were not contrary to clearly established federal law, and did not involve an unreasonable application of that clearly established federal law.

    6. <u>Claim Six</u>

In his sixth claim, Petitioner argues that the prosecutor's "repeated misconduct" denied Petitioner the right to a fair trial.  Petition at 14.  Specifically, he asserts that during the prosecutor's closing argument, she "repeatedly expressed the opinion that [Petitioner] was guilty, appealed to the sympathy and prejudice of the jury, and urged the jury to decide the case on issues other than the guilt or innocence of Petitioner." *Id.*

With regard to this claim, the CCA found the following:

> Defendant's objections to three of the remarks by the prosecutor were sustained by the trial court and the jury was instructed to disregard those statements.  In the absence of a showing to the contrary, we presume the jury heard and heeded the court's instructions. <u>See</u> <u>People v. Orona</u>, 907 P.2d 659 (Colo. App. 1995).

> If a defendant, on appeal, alleged prosecutorial misconduct in closing argument but did not object contemporaneously to the prosecutor's statements at trial, such statements will be reviewed for plain error only. <u>People v. Wilson</u>, 678 P.2d 1024 (Colo. App. 1983).

> Here, the prosecutor, in closing and rebuttal arguments, commented that "[w]e got the right guy" and "[w]e stopped the problem." These remarks were brief and made in the context of explaining that the victim was receiving therapy.  The prosecutor's other remarks, telling the

jury that defendant wants "you to ignore this little boy" and "to say kids don't matter" were made in response to defendant's closing argument discrediting the interviewing techniques used to elicit the victim's statements. Considered singly or cumulatively, these statements are not so egregious as to rise to the level of plain error.

*Vigil I* at 15-16.

Claims of prosecutorial misconduct generally are reviewed for a violation of due process. *Hamilton v. Mullin*, 436 F.3d 1181, 1187 (10th Cir. 2006) (citing *Darden v. Wainwright*, 477 U.S. 168 (1986) (citation omitted)). To be entitled to relief, a petitioner must establish that the prosecutor's conduct or remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* (internal quotations and citations omitted). "[I]t is not enough that the prosecutors' remarks were undesirable or even universally condemned." *Darden*, 477 U.S. at 181 (internal quotation marks omitted). "The ultimate question is whether the jury was able to fairly judge the evidence in light of the prosecutors' conduct." *Bland v. Sirmons*, 459 F.3d 999, 1024 (10th Cir. 2006). "To determine whether a trial is rendered fundamentally unfair, [the court] examine[s] the entire proceeding, 'including the strength of the evidence against the petitioner, both as to guilt at that stage of the trial and as to moral culpability at the sentencing phase' as well as '[a]ny cautionary steps - such as instructions to the jury - offered by the court to counteract improper remarks.'" *Id.* (quoting *Le*, 311 F.3d at 1013).

I have reviewed the prosecutor's closing argument, in addition to her rebuttal closing argument. *See* Trial Transcript, Vol. 11 at 859-88; 924-33. Like the state courts, I find that Petitioner has not demonstrated that the prosecutor's closing argument had the effect of preventing the jury from judging the evidence fairly or

reaching a verdict in accordance with the instructions provided.  *See Cummings v. Evans*, 161 F.3d 610, 618 (10th Cir. 1998) ("Habeas relief is available for prosecutorial misconduct only when the misconduct is so egregious that it renders the entire trial fundamentally unfair") (citations omitted).  Although at one point the prosecutor stated, "[w]e stopped the problem.  We started the solution.  We got the right guy," this brief statement was made within the context of a long and detailed closing argument that discussed the fact that CV was currently receiving therapy, as well as accurately set forth the evidence against Petitioner.  *See* Trial Transcript, Vol. 11 at p. 875.  Moreover, I find that any prejudice that could have resulted from the prosecutor's comments to the effect that "[y]ou can tell the defendant society values its children," and "[y]ou can say that [CV] belongs to all of us," and "[s]ince his father didn't do his job to protect [CV] in this world, we can," was sufficiently minimized by the trial court's curative instruction to the jury.  *See* Trial Transcript, Vol. 11 at 931-32; *see also Cummings*, 161 F.3d at 618 (finding that whether the "trial judge gave careful curative instructions to the jury" is one factor to be considered in determining whether improper statements made during closing argument rendered the trial fundamentally unfair).  Accordingly, because the state court's determination that the prosecutor's closing argument did not constitute prosecutorial misconduct was neither contrary to nor an unreasonable application of established law or based upon an unreasonable determination of the facts in light of the evidence, Petitioner is not entitled to habeas relief on this claim.

7.  Claim Seven

In his seventh claim, Petitioner argues that his conviction should be reversed "because the cumulative effect of the numerous errors at trial denied him his right to a

fair trial." Petition at 14.

"Cumulative error analysis is an extension of harmless error and conduct[s] the same inquiry as for individual error, focusing on the underlying fairness of the trial." *Darks v. Mullin*, 327 F.3d 1001, 1018 (10th Cir. 2003) (internal quotation marks and citation omitted). "Cumulative error analysis merely aggregates all the errors that individually have been found to be harmless, and therefore not reversible, and it analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless." *United States v. Rivera*, 900 F.2d 1462, 1469 (10th Cir. 1990) (citation omitted). However, cumulative error analysis applies where there are two or more actual errors; it does not apply to the cumulative effect of non-errors. *Moore v. Reynolds*, 153 F.3d 1086, 1113 (10th Cir. 1998). The court evaluates whether cumulative errors were harmless by determining whether a criminal defendant's substantial rights were affected. *Id.*

Petitioner does not specifically allege any cumulative errors here, other than a general reference to those raised in his Petition. However, I have found no actual errors as to any of the claims raised in the Petition. Because none of Petitioner's allegations amount to constitutional error, there exists no actual error to aggregate and no prejudicial cumulative error can exist. *See Workman v. Mullin*, 342 F.3d 1100, 1116 (10th Cir. 2003). Accordingly, I find that Petitioner is not entitled to federal habeas relief on this claim, and it must be dismissed.

8. <u>Claim Eight</u>

In his eighth claim, Petitioner alleges that his conviction violates his Sixth Amendment right to confrontation because it rests on hearsay evidence obtained from

24

CV.  Petition at 14.

Concluding that the Supreme Court's holding in *Crawford v. Washington*, 541

U.S. 36 (2004), did not apply retroactively to Petitioner's conviction, the CCA cited the

Colorado Supreme Court's decision in *Stevens v. People,* 796 P.2d 946 (Colo. 1990),

which in turn cited *Ohio v. Roberts*, 448 U.S. 56, 65 (1980), and found the following:

> After conducting two hearings, the trial court concluded that the
> victim's hearsay statements satisfied the requirements of <u>Stevens v.
> People</u>, <u>supra</u>, and admitted the victim's statements pursuant to [Colo.
> Rev. Stat.] § 13-25-129.  The court found that the statements bore
> sufficient indicia of reliability because they were spontaneous, age
> appropriate, and not the result of prompting, intrusiveness, leading, or
> suggestiveness by school personnel or the victim's therapist.  The court
> further found, because the victim was unavailable, that there was
> independent corroboration of the statements through various physical
> manifestations.

*Vigil II* at 7.

The Confrontation Clause guarantees an accused the right "to be confronted with

the witnesses against him."  U.S. Const. amend. VI.  "The main and essential purpose

of confrontation is to secure for the opponent the opportunity of cross-examination."

*Davis v. Alaska*, 415 U.S. 308, 315-16 (1974) (internal quotation marks omitted).  At the

time of Petitioner's conviction,[4] established constitutional law provided that the

---

[4]Although in *Crawford v. Washington* the Supreme Court tightened the analysis of
Confrontation Clause claims by limiting the admissibility of testimonial hearsay, in habeas
proceedings, I consider the state of constitutional law as it existed at the time of Petitioner's
conviction.  *See Stevens*, 465 F.3d at 1235 n. 2.  Moreover, while Petitioner argues that
*Crawford* should apply to his conviction, it is well established that *Crawford* "does not apply . . .
retroactively to cases on collateral review."  *Id.* (citing *Brown v. Uphoff*, 381 F.3d 1219, 1225
(10th Cir. 2004)); *see also Whorton v. Bockting*, 549 U.S. 406, 416-17 (2007) (finding that
*Crawford* did not announce a watershed rule, and therefore, could not be applied retroactively in
a habeas proceeding commenced by a defendant whose conviction was already final on direct
review).  Petitioner's conviction became final on March 1, 1999, when the Colorado Supreme
Court denied certiorari with regard to Petitioner's direct appeal, long before *Crawford* was
announced in March of 2004.  *See* Answer at Exhibit H.  Therefore, because *Crawford* does not

Confrontation Clause was not offended by the admission of testimonial hearsay if the statement fell within a "firmly rooted exception" to the hearsay rule, or if the statement was otherwise attended by "particularized guarantees of trustworthiness." *Stevens v. Ortiz*, 465 F.3d 1229, 1236 (10th Cir. 2006) (citing *Ohio v. Roberts*, 448 U.S. 56, 65 (1980)).  Under *Roberts*, an out-of-court statement is admissible if the prosecution demonstrates both the unavailability of the declarant and that the out-of-court statement has an "indicia of reliability." *Roberts*, 448 U.S. at 66; *see also Lilly v. Virginia*, 527 U.S. 116, 124-25 (1999).  The Supreme Court has renounced the application of a "mechanical test" to determine whether a given statement had sufficient indicia of reliability or truthfulness, and courts have "considerable leeway in their consideration of appropriate factors." *Idaho v. Wright*, 497 U.S. 805, 822 (1990).  In *Lilly*, the Court did not affirmatively describe what factors may demonstrate truthfulness, but suggested that its precedent dictated that truthfulness could be assessed by examining the actual words spoken as well as the setting in which such speech took place. *Lilly*, 527 U.S. at 139.

Petitioner makes no argument that the hearsay admitted at trial did not comport with the requirements of *Ohio v. Roberts*.  Further, with above standards in mind, I find that the CCA reasonably applied federal constitutional law as set forth in *Roberts* and *Idaho*.  The CCA's decision makes clear that the court focused its analysis on the context in which the statements were made, and found that the statements were not prompted through questioning, but instead were spontaneous and age-appropriate.

--------------------

apply retroactively, it is inapplicable to his claim.

*Vigil II* at 7.  Further, the CCA found that CV was unavailable as a witness, which was corroborated by certain physical manifestations of sexual abuse.  *Id.*  These findings are consistent with the Supreme Court's rule that circumstantial guarantees of trustworthiness must arise from the content or setting of the conversation itself. Accordingly, I find that the state courts' application of then-existing constitutional law regarding the Confrontation Clause was not unreasonable, and that this claim is without merit.

> 9.  <u>Claim Nine</u>

In his ninth claim, Petitioner alleges that he was denied his constitutional right to effective assistance of counsel at trial due to: (1) trial counsel's erroneous advice which led Petitioner to reject a plea bargain, (2) trial counsel's failure to investigate potential defenses and exculpatory evidence; and (3) trial counsel's inadequate performance at trial, including his lack of preparation and ignorance of the law.  Petition at 14-15.

It was clearly established when Petitioner was convicted that a defendant has a right to effective assistance of counsel.  *See Strickland v. Washington*, 466 U.S. 668 (1984).  To establish that his trial counsel was ineffective, Petitioner must demonstrate both that counsel's performance fell below an objective standard of reasonableness and that counsel's deficient performance resulted in prejudice to his defense.  *See id.* at 687-88.  In addition, "[j]udicial scrutiny of counsel's performance must be highly deferential."  *Id.* at 689.  There is a "strong presumption" that counsel's performance falls within the range of "reasonable professional assistance."  *Id.*  It is Petitioner's burden to overcome this presumption by showing that the alleged errors were not sound strategy under the circumstances.  *See id.*  Under the prejudice prong, Petitioner must

establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. If Petitioner fails to satisfy his burden with regard to either prong of the *Strickland* test, his ineffective assistance of counsel claim must be dismissed. *See id.* at 697. Finally, ineffective assistance of counsel claims are mixed questions of law and fact. *See id.* at 698.

### A. Counsel's Advice Regarding the Plea Bargain

Petitioner first argues that counsel provided him "erroneous advice concerning potential sentences" which, he alleges, caused him to mistakenly reject a misdemeanor plea bargain. Petition at 14.

In addressing this claim upon its review of Petitioner's 35(c) appeal, the CCA found that:

> Here, defendant's counsel advised him that the maximum presumptive sentence for conviction of each crime was twelve years and that the maximum aggravated sentence for each charge was twenty-four years. However, because the original charges were classified as extraordinary risk crimes, the maximum presumptive sentence was actually sixteen years, and the maximum aggravated sentence was thirty-two years.

> The trial court found that plea counsel had incorrectly informed defendant of the possible penalties, but that the advice did not prejudice defendant. The court reasoned: "Whatever factors the defendant was considering in rejecting the plea offer, there is no evidence that the difference between a potential sentence of [twenty-four] years or [thirty-two] years on each count was one of them." The court determined that the fact that defendant had initially accepted the plea offer and then changed his mind "[did] not show that the defendant was relying on defense counsel's inaccurate advisement of the maximum possible terms." Rather, "evidence at the [Crim. P.] 35(c) hearing suggests that the defendant changed his mind and rejected the plea offer because of the advice he received from his brother-in-law." The court concluded that "defendant [had] not proved that there is a reasonable probability that he would have accepted the plea offer if [plea counsel] had correctly advised him."

*Vigil II* at 13.

Pursuant to § 2254(e)(1), the state courts' finding that Petitioner rejected the plea offer based upon advice from his brother-in-law, and not due to counsel's failure to correctly advise him of the maximum sentence, is presumptively correct.  While Petitioner bears the burden of rebutting the presumption by clear and convincing evidence he has failed to present any such evidence.  Further, to prove ineffective assistance of counsel, more than a simple mistake of law is needed.  *See Bullock v. Carver*, 297 F.3d 1036,1048 (10th Cir. 2002).  Instead, under the prejudice prong, Petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.  Like the CCA, I find that Petitioner was not prejudiced by counsel's failure to advise him of the correct sentences, because it was established that Petitioner did not rely on this erroneous advice when he rejected the plea bargain.  Therefore, Petitioner cannot demonstrate that he was prejudiced by this mistake.  *See Rompilla v. Beard*, 545 U.S. 374, 405 (2005) (Kennedy, J., dissenting) (noting that the defendant bears the burden of proving prejudice); *see also Strickland*, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.").  I find that decision of the CCA did not result in a decision that was contrary to, or involved an unreasonable application of, *Strickland*.

B.  Counsel's Failure to Investigate

Second, Petitioner argues that his counsel failed to investigate whether CV's "sexual abuse behavior" could have been attributed to others.  Petition at 15.

29

In reviewing this claim, the CCA applied the proper standard from *Strickland*, and found that:

> Defendant next argues that his plea and trial counsel were ineffective in their investigation because they failed to interview the victim's mother and the social worker who investigated claims of sexual abuse in the year before defendant was named.
> . . . .
>
> The trial court found that defendant's plea and trial counsel did not interview the victim's mother or the social worker, but that defendant's trial counsel was aware of the information that was presented in the Crim. P. 35(c) hearing.  The court determined that he "was aware of most if not all of [the victim's] interview and doctor visits" and "attempted to gain further evidence about the interview with [CV] and to have it admitted at trial" through various motions filed with the court.
> . . . .
>
> The record supports the trial court's determination that it was likely that counsel was aware of the victim's interview with the department of social services employees, school personnel, and his therapists.  Further, the record reflects that during the trial, defendant's counsel attempted to cross-examine the prosecutions's witnesses regarding the victim's identification of others as his abuser and the court refused to allow him to cross-examine about this issue, concluding that the evidence that others were named was not relevant or material and was barred by the rape shield statute.
>
> The record also shows that counsel attempted to discover department of social services records and mental health records concerning the victim and, after an in-camera inspection of the records, the trial court determined that the records were not relevant and that there was nothing in the records that would be exculpatory.

*Vigil II* at 14-17.

"In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments."  *Strickland*, 466 U.S. at 691.  "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options

are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* at 690-91.

The state courts found that Petitioner's counsel was aware of the prior interviews where CV had identified his uncle as a person who had abused him in the past. The state courts further found that counsel made reasonable efforts to pursue, discover and use this information at trial. Pursuant to § 2254(e)(1), the state courts' findings are presumptively correct. While Petitioner bears the burden of rebutting the presumption by clear and convincing evidence he has failed to present any such evidence. Accordingly, Petitioner has failed to rebut the state courts' finding that counsel effectively and thoroughly investigated his case, and therefore, has not overcome the "strong presumption" that counsel's performance falls within the range of "reasonable professional assistance." *Strickland*, 466 U.S. at 689. As a result, I find the decision of the CCA did not result in a decision that was contrary to, or involved an unreasonable application of, *Strickland*.

### C. Inadequate Trial Performance

Finally, Petitioner argues that his counsel's performance at trial was inadequate for a variety of reasons, including lack of preparation, ignorance of the law, failure to object to the prosecutor's actions and other errors that Petitioner alleges occurred during the jury selection and trial. Petition at 14-15.

Although Respondents do not raise the issues of exhaustion and procedural bar, upon review of Petitioner's direct appeal and post-conviction proceedings, it appears that Petitioner did not raise to the state courts the claim he presents here. First,

Petitioner did not raise any ineffective assistance of counsel claims during his direct appeal.  *See* Answer at Exhibit A.  Second, during Petitioner's 35(c) appeal, he raised the following two ineffective assistance of counsel claims: (1) "[c]ounsel, ignorant of the law, incorrectly advise[d] [Petitioner] on the potential sentencing consequences of foregoing an offered misdemeanor plea disposition and losing at trial"; and (2) "[c]ounsel unreasonably fail[ed] to pursue investigative leads that would have yielded probative evidence to counter the prosecution's case."  Answer at Exhibit I, p. 3.  These two claims were addressed by the state courts, and I have fully reviewed them on the merits, at set forth above.  However, Petitioner's 35(c) appeal did not present the claims of inadequate trial performance that he now attempts to bring in this court.

Pursuant to 28 U.S.C. § 2254(b)(1), a petition for a writ of habeas corpus may not be granted unless it appears that the petitioner has exhausted state remedies or that no adequate state remedies are available or effective to protect the applicant's rights.  *See O'Sullivan*, 526 U.S. at 838; *Dever v. Kansas State Penitentiary*, 36 F.3d 1531, 1534 (10th Cir. 1994).  A claim has been exhausted when it has been "fairly presented" to the state court.  *Bland*, 459 F.3d at 1011 (citing *Picard v. Connor*, 404 U.S. 270, 275 (1971)).  Fair presentation requires that the federal issue be presented properly "to the highest state court, either by direct review of the conviction or in a postconviction attack."  *Dever*, 36 F.3d at 1534.  Finally, "[t]he exhaustion requirement is not one to be overlooked lightly."  *Hernandez v. Starbuck,* 69 F.3d 1089, 1092 (10th Cir. 1995).  A state prisoner bringing a federal habeas corpus action bears the burden of showing that he has exhausted all available state remedies.  *See Miranda v. Cooper,* 967 F.2d 392, 398 (10th Cir. 1992).

32

Although Respondents have not raised the issues of exhaustion and procedural bar, "a federal habeas court can always raise procedural bar *sua sponte*." *Romano v. Gibson*, 239 F.3d 1156, 1168 (10th Cir. 2001).   As such, on June 4, 2009, the Court issued an order to show cause to provide Petitioner the opportunity to demonstrate why this claim should not be dismissed as unexhausted and procedurally barred.  *See Hardiman v. Reynolds*, 971 F.2d 500, 505 (10th Cir. 1992) (finding that the defense of state procedural bar may be raised *sua sponte* as long as the court provides petitioner the opportunity to respond).  Petitioner apparently had not updated his address with this court and the order sent to his last known address returned as undeliverable.  Petitioner thereafter submitted a letter (Docket No. 24) in which he provided a new address and stated that his lawyer had advised him that "the 35-C was never filed with the court."  It is unclear what Petitioner intended to communicate with this but at a minimum it does not appear that any new efforts have been made to present the issue to the state courts.  A second order to show cause was issued on October 1, 2009 again notifying Petitioner that he needed to address the exhaustion issue with respect to this subclaim.  Petitioner did not respond to the second order to show cause.  Accordingly, based upon my review of the state court proceedings, I find that this claim was never presented to the state courts, and is therefore unexhausted.

If a petitioner has not exhausted his state remedies, his petition is generally denied without prejudice so that he may present his claims to the state court.  *See Coleman*, 501 U.S. at 731.  However, if "the court to which the petitioner would be required to present his claim in order to meet the exhaustion requirement would now find the claims procedurally barred," then the petitioner is considered to have

procedurally defaulted his claims and federal habeas review is precluded.  *Id.* at 755 n.

1.  Here, no further state court remedy exists as any future claim would be denied as

successive under Colo. R. Crim. P. 35(c)(3) because it could have been presented in an

appeal or postconviction proceeding previously brought, *see* Rule 35(c)(3)(VII).  A

federal district court "does not address issues that have been defaulted in state court on

an independent and adequate procedural ground, unless the petitioner can demonstrate

cause and prejudice or a fundamental miscarriage of justice."  *English v. Cody*, 146

F.3d 1257, 1259 (10th Cir. 1998) (citations omitted).  Application of this procedural

default rule in the habeas corpus context is based on comity and federalism concerns.

*See Coleman,* 501 U.S. at 730.  Petitioner's *pro se* status does not exempt him from the

requirement of demonstrating either cause and prejudice or a fundamental miscarriage

of justice. *See Lepiscopo v. Tansy,* 38 F.3d 1128, 1130 (10th Cir. 1994).  Petitioner has

not provided any basis for a finding of cause and prejudice or a fundamental

miscarriage of justice in this action.  Therefore, I find and conclude that this sub-claim of

Petitioner's ninth claim must be dismissed as procedurally defaulted.

     Accordingly, it is ordered:

1.   Petitioner Lionel Albert Vigil's Petition Under 28 U.S.C. § 2254 For Writ of

    Habeas Corpus ("Petition") (Docket No. 4) is denied.

2.    This case is dismissed with prejudice.

    DATED at Denver, Colorado, on January 21, 2010.

               BY THE COURT:

               s/ Walker D. Miller
               United States Senior District Judge